UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 20-62055-CIV-SINGHAL

UNITED STATES OF AMERICA,

    Plaintiff,

v.

PETER LAWSON,

    Defendant.
_____/

## OMNIBUS ORDER

**THIS CAUSE** is before the Court on Plaintiff's Motion for Summary Judgment (DE [23]), which is fully briefed, and Plaintiff's Motion for Leave to File Supplement to Motion for Summary Judgment (DE [29]), which is opposed. These matters are ripe for review. Also before this Court is Plaintiff's Motion to Exclude Testimony of Ryan Coyle (DE [37]), which was filed February 2, 2022.

### I.    BACKGROUND FACTS

This case involves the unpaid federal income tax liabilities of Defendant Peter Lawson ("Defendant"), a businessman and consultant. Plaintiff, the United States of America (the "Government"), filed this Complaint (DE [1]) on October 9, 2020, against Defendant who failed to timely file his federal income tax returns for the 2001 and 2006 tax years. The Internal Revenue Service (the "IRS") assessed federal income taxes against Defendant for the 2001 and 2006 tax years, respectively, based on substitute tax returns prepared by the IRS. Defendant's tax liabilities for the 2001 tax year were

assessed on August 11, 2008, and for the 2006 tax year on September 14, 2009. *See* (DE [23-12]).  The IRS also assessed interest against Defendant and penalties for failing to make estimated tax payments, to pay the tax when due, and to file his returns on time. The IRS adjusted its original assessments against Defendant based on federal income tax returns filed by Defendant for the 2001 and 2006 tax years.  Defendant's federal income tax totaled $415,813 for the 2001 tax year and $97,664 for the 2006 tax year. The IRS reduced Defendant's estimated tax payment penalties, failure-to-pay penalties, and failure-to-file-return penalties in accordance with the adjustments to the original assessments.  Defendant has not paid the tax liabilities that were assessed against him for the 2001 and 2006 tax years.

Defendant submitted an offer-in-compromise for his 2001, 2002, and 2006 tax liabilities on September 28, 2010, in which he proposed to pay $76,250.  This offer-in-compromise was rejected on December 1, 2011.  Defendant appealed the IRS's rejection of this offer-in-compromise on December 29, 2011.  The parties dispute when Defendant's appeal was rejected: the Government claims the IRS upheld the rejection of Defendant's offer-in-compromise on May 8, 2012, Defendant claims the IRS upheld the rejection on April 25, 2012, when Nancy Gropack, an IRS employee, communicated the rejection of Defendant's appeal on a telephone call with Defendant's attorney, who is now deceased.

The Government claims on July 3, 2018, Defendant's representative proposed an installment agreement to the revenue officer assigned to collect his unpaid tax liabilities, which she documented in the IRS's Integrated Collection System ("ICS").  The Government claims Defendant submitted a signed and dated Form 433-D titled

"Installment Agreement" to the IRS on September 5, 2018, "to formalize his proposed installment agreement."  Defendant disputes the characterization of "formalizing his proposed installment agreement" and claims no proposed installment agreement was submitted for consideration by the IRS until September 10, 2018.  *See* (Ex. A. (DE [25-1]) IRS Form 433-D).  Defendant argues the tolling time is reduced by an additional seven days because the IRS requested additional information from Defendant before Defendant's installment agreement could be evaluated.  The additional information requested was provided on September 17, 2018.

The Government claims the terms of the installment agreement were a $20,000 lump sum payment, followed by $1,200 monthly installment payments over five years for a total payment of $92,000.  Defendant, however, disputes the characterization as it was a proposed installment agreement, which the IRS did not accept until December 6, 2018.  *See* (Ex. L (DE [23-18]) dated Dec. 6, 2018).  On December 11, 2018, Defendant requested the IRS modify the terms of the installment agreement.  Revenue Officer Fulton did not agree to alter the terms of the installment agreement and recommended that Defendant default on the installment agreement.

Defendant never paid the initial lump sum payment and failed to make the requisite monthly payments.  As a result, the IRS sent a notice of intent to terminate the installment agreement to Defendant dated May 20, 2019.  The Government claims the IRS terminated Defendant's installment agreement on June 29, 2019.  (Ex. O (DE [23-21]) Termination).  Defendant, however, claims he terminated the installment agreement on December 29, 2018, when he wrote to the IRS that he was unable to make payments on his installment agreement and that he would not enter into an installment agreement

knowing he could not make required payments.  (Ex. D (DE [25-4]) Letter dated Dec. 29, 2018).

## II.     LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment "is appropriate only if 'the movant shows that there is no genuine [dispute] as to any material fact and the movant is entitled to judgment as a matter of law.'"  *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (per curiam) (quoting Fed. R. Civ. P. 56(a));[1] *see also Alabama v. North Carolina*, 560 U.S. 330, 344 (2010).  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  An issue is "genuine" if a reasonable trier of fact, viewing all the record evidence, could rationally find in favor of the nonmoving party in light of his burden of proof.  *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014).  And a fact is "material" if, "under the applicable substantive law, it might affect the outcome of the case."  *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004).  "[W]here the material facts are undisputed and do not support a reasonable inference in favor of the non-movant, summary judgment may properly be granted as a matter of law."  *DA Realty Holdings, LLC v. Tenn. Land Consultants*, 631 Fed. Appx. 817, 820 (11th Cir. 2015).

The Court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor.  *SEC v. Monterosso*, 756 F.3d 1326, 1333 (11th Cir. 2014).  However, to prevail on a motion for summary judgment,

---

[1] The 2010 Amendment to Rule 56(a) substituted the phrase "genuine dispute" for the former "'genuine issue' of any material fact."

"the nonmoving party must offer more than a mere scintilla of evidence for its position; indeed, the nonmoving party must make a showing sufficient to permit the jury to reasonably find on its behalf." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015).  "[T]his, however, does not mean that we are constrained to accept all the nonmovant's factual characterizations and legal arguments." *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 459 (11th Cir. 1994).

### III.   DISCUSSION

#### A. Plaintiff's Motion for Leave to File Supplement to Motion for Summary Judgment (DE [29])

As an initial matter, this Court denies Plaintiff's Motion for Leave to File Supplement to Motion for Summary Judgment (DE [29]) as untimely.  In the motion to supplement, the Government requests leave to supplement the Motion for Summary Judgment (DE [23]) to include new facts about Defendant's second offer-in-compromise and raise an additional argument in support of the Motion for Summary Judgment (DE [23]).  The Government argues it may have omitted some undisputed facts based on a misreading of 26 U.S.C. § 6331, but it was a not a mistake of law that should preclude it from arguing the existence of excusable neglect under Federal Rule of Civil Procedure 6(b), and the *Pioneer*[2] factors weigh in favor of allowing the United States to supplement its summary judgment motion.  Defendant opposes the motion, arguing a mistake of law does not constitute excusable neglect.  This Court agrees.

---

[2] *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 395 (1993).

Federal Rule of Civil Procedure 6(b)(1)(B) provides that the court may, for good cause, extend the time for a party to file a motion for summary judgment after the time for filing has expired, but only if the moving party failed to act because of "excusable neglect." Excusable neglect "is understood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence." *Pioneer*, 507 U.S. at 394. The Eleventh Circuit held that "excusable neglect" is to be determined by reference to a four-factor test: "the danger of prejudice to the [nonmovant], the length of delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.* at 395. Here, the Government seeks to supplement its timely filed motion for summary judgment to include additional facts about the tolling events at issue in the case. These additional facts, however, were known to the Government at the time of filing its motion for summary judgment. Further, its mistaken, misreading of 26 U.S.C. § 6331 does not constitute excusable neglect. *See Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1356 (11th Cir. 2009) ("[t]his circuit recognizes that an attorney's misinterpretation of the law does not constitute excusable neglect . . . "); *Advanced Estimating Sys., Inc. v. Riney*, 130 F.3d 996, 997 (11th Cir. 1997) ("Guided by the decision in *Pioneer* and decisions in this circuit, we hold that, as a matter of law, the lawyer's failure to understand clear law cannot constitute excusable neglect."). Accordingly, Plaintiff's Motion for Leave to File Supplement to Motion for Summary Judgment (DE [29]) is denied.

**B. <u>Plaintiff's Motion for Summary Judgment (DE [23])</u>**

This is a collections lawsuit involving the ten-year statute of limitations under 26 U.S.C. § 6502 and whether the statute of limitations was tolled for more than 790 days. In its Motion for Summary Judgment (DE [23]), the Government argues it has demonstrated that Defendant is liable to the United States for his unpaid federal income tax liabilities totaling $602,569.05 as of November 2, 2021, for the 2001 and 2006 tax years and that the United States timely filed this suit against Defendant on October 9, 2020. Defendant opposes summary judgment on the basis that several questions of fact exist which affect the computation for the tolling of the statute of limitations on collection under 26 U.S.C. § 6502 and defeat summary judgment. There are three aspects of tolling at issue: (1) when Defendant's installment agreement became pending; (2) when Defendant's installment agreement was terminated; and (3) whether the statute of limitations was tolled for an additional thirty days following the IRS's rejection of Defendant's appeal.

By statute, the United States has ten years from the date of an assessment to collect unpaid federal income taxes. *See* 26 U.S.C. § 6502. However, there are certain events that can "toll" or extend the ten-year limitations period. For example, when a taxpayer makes an offer-in-compromise, the ten-year statute of limitations is suspended until the IRS acts on the offer. *See id.* §§ 6331(k), (i)(5). "Offers in compromise contain a waiver of the limitations period in order to enable the Government to consider the offer without the prejudice resulting from a running of the limitations period against the collection of the tax*.*" *United States v. Ryals*, 480 F.3d 1101, 1105 (11th Cir. 2007)

(citation omitted).  "The running of the statutory period is suspended until the offer of compromise is terminated, withdrawn, or formally rejected."  *Id.*

Likewise, the IRS cannot collect a liability—and the statute of limitations is tolled—"during the period that a proposed installment agreement relating to that liability is pending with the IRS."  26 C.F.R. § 301.6331-4(c); *see also* 26 U.S.C. §§ 6331(k)(2), (3).  The statute of limitations is also tolled for thirty days after the termination of an installment agreement.  *See* 26 U.S.C. § 6331(k)(2)(D), (k)(3)(B); 26 CFR § 301.6331-4(c)(1).  If the IRS denies a taxpayer's offer-in-compromise or proposed installment agreement, the taxpayer may take an administrative appeal, during which the collection freeze remains in place and the statute of limitations remains tolled.  *See* 26 U.S.C. §§ 6331(i)(6), (k)(1)(B), (k)(2)(B).

### 1. *When Installment Agreement Became Pending?*

The Internal Revenue Code ("IRC") requires that a suit to collect taxes be filed within ten years of the assessment of taxes.  *See* 26 U.S.C. § 6502(a)(1).  "The period of limitations under section 6502 shall be suspended for the period during which the Secretary [of the Treasury] is prohibited under this subsection from making a levy."  26 U.S.C. § 6331(i)(5) (alteration added).  Levying is prohibited in various circumstances, two of which are relevant here: (1) when an offer-in-compromise is pending with the Secretary and during the thirty days after such offer is rejected by the Secretary, *see id.* § 6331(k)(1); and (2) when an offer for an installment agreement is pending with the Secretary and during the thirty days after such offer is rejected by the Secretary, *see id.* § 6331(k)(2).  "The ultimate burden of proof on the limitations defense always rests on the taxpayer."  *Feldman v. Comm'r*, 20 F.3d 1128, 1132 (11th Cir. 1994) (citation omitted).

The IRS is prohibited from making a levy on property or the rights to property of a person with respect to an unpaid tax while:

> **(2) Installment Agreements.**
> . . .
>> (A) during the period that an offer . . . for an installment agreement . . . is pending with the Secretary;
>>
>> (B) if such offer is rejected by the Secretary, during the 30 days thereafter (and, if an appeal of such rejection is filed within such 30 days, during the period that such appeal is pending);
>>
>> (C) during the period that such an installment agreement for payment of such unpaid tax is in effect; and
>> . . .

26 U.S.C. § 6331(k)(2). "A proposed installment agreement becomes pending when it is accepted for processing." 26 C.F.R. § 301.6331-4(a)(2).

Section 301.6159-1(b)(1) of the Treasury regulations mandates that "[a] proposed installment agreement must be submitted according to the procedures, and in the form and manner, prescribed by the Commissioner." 26 C.F.R. § 301.6331-4(a). The form and manner prescribed by the Commissioner for submission of a proposed installment agreement is set forth in section 5.14.1.3(4) of the Internal Revenue Manual ("IRM"), which requires taxpayers to provide "specific information for installment agreement requests to be processed." IRM § 5.14.1.3(4); *see also id.* § 5.14.1.1(1)(b) (explaining the IRM "[p]rescribes pending installment agreement criteria and when to input pending status to IDRS"). As relevant here, "taxpayers must[,]" among other things, "[p]ropose a monthly or other periodic payment of a specific amount" for the account to be identified as being in pending installment agreement status. *Id.* § 5.14.1.3(4)(c) (emphasis in original); *see also id.* § 5.14.1.3(6) ("A monthly payment amount must be specified for the

account to be marked pending." (quotation marks omitted; emphasis in original)). An installment agreement request "will not be considered pending until the [required] information is received to perfect the [installment agreement] request[.]" *Id.*

At the summary judgment stage, the evidence indicates Defendant did not submit a proposed installment agreement until September 10, 2018. This Court is unpersuaded by the Government's arguments to the contrary. Binding Treasury regulation refers to and incorporates the relevant IRM provisions by requiring compliance with "the procedures . . . prescribed by the Commissioner." 26 C.F.R. § 301.6159-1(b)(1); *see also Romano-Murphy v. Comm'r of Internal Revenue*, 816 F.3d 707, 718 (11th Cir. 2016) ("Treasury regulations are binding on the Government as well as the taxpayer."). Those procedures, in turn, require submission of a proposed installment agreement for an installment agreement request "to be processed" and instruct that a request "will not be considered pending" until such information is received. IRM §§ 5.14.1.3(4), (6); *see also id.* § 5.14.1.1(1)(b). Defendant did not satisfy the requirements, by the Government's own admission, until it was "formalized" in writing and signed by Defendant on September 5, 2018, and submitted on September 10, 2018. The IRS's decision to process Defendant's installment agreement as pending as of July 13, 2018, was "inconsistent" with the applicable provisions of the IRM and therefore violated the binding Treasury regulation requiring compliance with those provisions. The IRS's treatment of July 13, 2018, as a pending installment agreement request was in error; Defendant did not submit a compliant installment agreement request that could be validly accepted for processing and considered "pending" until September 2018; and the statute of limitations was not tolled from July 13, 2018, and September 10, 2018. Accordingly, the statute of limitations

was not tolled because there was no proper proposal for an installment agreement for the tax years at issue due, in part, to the Defendant's failure to formalize a proposed installment agreement into writing until September.

### 2. When Installment Agreement Was Terminated?

Section 6331(k)(2) prohibits the IRS from issuing a levy:

> **(2) Installment Agreements.**
> . . .
> > . . .
> > (D) if such agreement is terminated **by the Secretary**, during the 30 days thereafter (and, if an appeal of such termination is filed within such 30 days, during the period that such appeal is pending).

26 U.S.C. § 6331(k)(2)(D) (emphasis added). In support of its Motion for Summary Judgment (DE [23]), the Government argues it terminated the installment agreement on June 29, 2019, by first providing thirty-days' notice to Defendant on May 30, 2019. The Government argues section 6159 only permits the Secretary—not taxpayers—to terminate installment agreements. In support of such claim, the Government argues Congress intended that the Secretary alone have the ability to terminate an installment agreement because section 6159 only describes the Secretary's ability to terminate, modify, or alter an installment agreement. This argument is unfounded and contradicted by instructions on the Government's own website.[3] Accordingly, the Government has failed to establish no genuine issues of material fact exist as to who terminated the installment agreement when, particularly as Defendant has proffered countervailing evidence. *See* (Ex. D (DE [25-4]) dated Dec. 29, 2018) (explaining he was unable to

---

[3] *See also* Instructions for Form 9465 (10/2020), https://www.irs.gov/instructions/i9465 ("**Requests to modify or terminate an installment agreement.** After an installment agreement is approved, you may submit a request to modify or terminate an installment agreement.") (emphasis in original).

make payments on his installment agreement and that he would not enter into an installment agreement knowing he could not make required payments).

### 3. Whether Appeal Tolled?

Section 6331(k)(1) bars the IRS from issuing a levy,

> **(1) Offer-in-compromise pending.**
> . . .
>> (A) during the period that an offer-in-compromise . . . is pending with the Secretary;
>>
>> (B) if such offer is rejected by the Secretary, during the 30 days thereafter (and, **if an appeal of such rejection is filed within such 30 days, during the period that such appeal is pending**).

26 U.S.C. § 6331(k)(1)(B) (emphasis added).  In other words, section 6331(k)(1)(B) expressly provides that the statute of limitations is tolled throughout the pendency of an appeal.  Here, it is undisputed that Defendant submitted his offer-in-compromise on September 28, 2010; Defendant's offer-in-compromise was rejected on December 1, 2011; and Defendant timely appealed the IRS's rejection of this offer-in-compromise on December 29, 2011.  When this appeal was denied is, however, in dispute.  The Government insists the appeal was denied on May 8, 2012, in the form of a formal letter from the IRS.  Defendant insists the appeal was denied on April 25, 2012, when the denial was communicated to his then-lawyer over the phone.  The Government argues Defendant has no competent evidence to contradict its stated denial because Defendant's declaration about what his former attorney said an IRS employee said is inadmissible hearsay.  This Court agrees.  *See* Fed. R. Evid. 801(c); *see also Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999) ("The general rule is that inadmissible hearsay 'cannot be considered on a motion for summary judgment.'") (citation omitted).

Under the statute, thirty days are added only if a taxpayer does not appeal the rejection of an offer in compromise. If a rejection is appealed, as it was here, then the statute remains tolled throughout the pendency of the appeal, but no longer. Whether the appeal was denied in April or May, the Government agrees the collection statute of limitations did not toll for an additional thirty days following the rejection of the offer-in-compromise. Accordingly, the statute of limitations remained tolled throughout the period during which Defendant's appeal was pending.

In its reply, the Government argues the April/May issue does not create a genuine dispute of material fact because Defendant submitted a second offer-in-compromise in mid-2013, which did extend the statute of limitations for additional sixty days, thus making the suit against him timely filed. The Government, however, did not brief this issue as part of its Motion for Summary Judgment.[4] Accordingly, the Motion for Summary Judgment (DE [23]) is denied as the Government has failed to demonstrate no genuine issues of material fact exists.

### C. Plaintiff's Motion to Exclude Testimony of Ryan Coyle (DE [37])

On February 2, 2022, the Government filed an untimely motion *in limine* requesting this Court exclude the testimony of Mr. Ryan Coyle at trial. Defendant has not responded to the motion. The Government argues Defendant failed to name Mr. Ryan Coyle in his initial disclosures, and instead, disclosed this witness on January 31, 2022, just a few weeks before trial. This Court's Order Setting Trial (DE [15]) set the deadline for any

---

[4] *See supra* III. Discussion A. Plaintiff's Motion for Leave to File Supplement to Motion for Summary Judgment (DE [29]).

motion *in limine* for November 26, 2021. Accordingly, the motion is untimely and as a result this Court will deny the motion.

Accordingly, it is hereby

**ORDERED AND ADJUDGED** that Plaintiff's Motion for Summary Judgment (DE [23]) is **DENIED** as factual issues remain that must be resolved at trial. Plaintiff's Motion for Leave to File Supplement to Motion for Summary Judgment (DE [29]) is **DENIED**. Plaintiff's Motion to Exclude Testimony of Ryan Coyle (DE [37]) is **DENIED**.

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 11th day of February 2022.

_____
RAAG SINGHAL
UNITED STATES DISTRICT JUDGE

Copies furnished to counsel of record via CM/ECF